Robert GOLD et al., Appellants,

v.

EASTRIDGE TERRACE DEVELOPMENT CORP. et al., Appellees.

No. 14484.

Court of Civil Appeals of Texas.

Dec. 9, 1965.

Rehearing Denied Jan. 6, 1966.

**326**

Hugh E. McGee, Jr., Houston, for appellants.

Sam L. Sterrett, Jr., Houston, for appellee Home Title Co.

BELL, Chief Justice.

Appellants sued appellees to recover $90,000.00 which represented the purchase price of an 80 acre tract of land lying in Harris County. Appellee, Home Title Company, was sued on the theory that it had agreed with appellants to withhold on their behalf so much money per lot as each lot was sold and that it had failed to do so. At the conclusion of appellants' testimony the court instructed the jury to return a verdict for appellees that appellants take nothing. Judgment on such verdict was rendered in favor of appellees.

By general warranty deed dated August 12, 1954, J. M. Ballard, Thad A. Simmons, Robert Gold and Dan Shaklovitz, Jr., who, with the exception of Shaklovitz, are appellants, conveyed to Eastridge Terrace De-velopment Corporation, herein called Eastridge, a described 80 acres of land. The deed actually described a 100 acre tract and recited it was the same property described as Tract I in a deed from Joe Allbritton to the grantors dated December 28, 1953. The deed to Eastridge excepted in favor of Allbritton certain specified lots and blocks shown "on a preliminary plat prepared by Thos. D. Heaney." The plat does not appear in the record and we are unable to locate such lots and blocks. This last fact was one thing that troubled the trial court. It seems conceded, however, that the land excepted amounted to 20 acres. The deed to Eastridge also conveyed the grantors' rights to an option they had to purchase from Allbritton Tracts II, III and IV described in the deed from Allbritton to appellants. Tract II contained 92.83 acres. Tract III contained 150.6 acres. Tract IV contained 53.30 acres. Allbritton is an appellant, he having succeeded to the rights of Shaklovitz. Though we will hereafter, for purposes of brevity, refer to acts of appellants, Allbritton was not a party to said acts, but after they occurred succeeded to Shaklovitz's interest. The deed into Eastridge in form appeared to be a cash transaction. The property was owned in equal shares by grantors prior to the conveyance to Eastridge.

By a written agreement dated the same day as the deed to Eastridge between appellants and Eastridge, Eastridge agreed to pay appellants jointly for Tract I the sum of $90,000.00. The paragraph setting this out reads as follows:

"You have agreed to pay us jointly the sum of $90,000.00 out of the *net proceeds* received by you from any sale or sales of the lots into which said Tract I may be subdivided, which sum shall be so paid us jointly at the rate of $300.00 per lot sold until said sum has been paid in full, as and when sold." (Emphasis ours unless otherwise stated.)

The agreement goes on to provide that in addition to the $90,000.00, Eastridge will

pay to appellants 25% of the *net profits,* such profits to be computed after taxes measured by income. It is further provided " * * * that without limiting the meaning of net profits * * * net profits shall not be deemed to have accrued or been earned until the full amount of any and all costs of acquisition, development and other outlays of a capital nature * * * have been recovered back."

Following the above is this material provision:

"It is agreed that any rights accruing to us hereunder shall be and are subordinated to any loans and liens securing same which you may make for the development and/or subdivision of said properties."

In form the agreement was a letter addressed to Eastridge, signed by appellants, and then Eastridge approved it by signing it.

On July 12, 1955, the above agreement was modified. The agreement recites the previous agreement by Eastridge to pay appellants out of the net proceeds from the sale of lots in Tract I at the rate of $300.00 per lot out of the net proceeds received from the sale of the lots. Then follows this provision:

"It is hereby agreed that you (Eastridge) shall not be obligated to pay us any amount on the sale of the first 80 lots covered by such agreement, and/or your collection of the sales price thereof; however, after you have sold and collected the sales price for 80 of said lots, then you shall pay the sum of $600.00 per lot, until said $90,000.00 has been paid in full, as and when such lots are so sold and the full sales price is received as otherwise set out in such letter."

This agreement also provides that " * * * except as expressly modified, such letter agreement of August 12, 1954, shall remain in full force and effect as therein set out."

This letter, signed by Allbritton, recited his succession to the rights of Shaklovitz.

The position of appellants here is that the record shows that all lots in Tract I were sold and each one sold, after the first 80 lots, sold for an amount in excess of $600.00 and brought far more, in the aggregate, than $90,000.00. They contend that if the "net proceeds" were less than this, the burden of proving debts, expenses, etc., that reduced the gross sales price was on appellees. Home Title contends it never agreed to withhold any proceeds, and if it did, the agreement was not in writing and was unenforceable, because within the Statute of Frauds, Article 3995, Vernon's Ann.Tex.Civ.St. It contends further that payment was to be made out of the "net proceeds" from the sale of lots; that appellants' rights were subordinate to any loans and liens securing same given for the subdivision and development of the property, and the burden of proving there were any "net proceeds", that is, proceeds over and above expenses of subdividing and development and other expenses, was on appellants and the record is devoid of any such proof.

Eastridge contended the same in the trial court, as does Home Title here, except for the Statute of Frauds, though Eastridge has filed no brief here.

There is no contention here that the agreement of July, 1955, changed the method of payment except no payment was to be made on the first 80 lots sold and thereafter payment was to be $600.00 per lot sold instead of $300.00. The result is that after the first 80 lots were sold the sum of $600.00 out of the "net proceeds" derived from the sale was to be paid appellants and all of appellants' rights were subordinate to any loans made in the development of the property.

■ We have reached the conclusion that the burden of proof was on appellants to prove there were "net proceeds" from the sale of lots into which Tract I was subdivided, before they could recover. It appears from the evidence that there were loans made to finance the development of

the property and there is no evidence showing the sale of lots for amounts in excess of the charges against them. The contract upon which appellants sue entitles them to payment only if there are "net proceeds". While the term "net proceeds" is not specifically defined, the contract by its provision subordinating any of appellants' rights to any loans and loans and liens securing same made by Eastridge in developing and subdividing the property means there would be no net proceeds from the sale of lots until payment of such loans, or the part allocable to each lot, was made. Mercantile National Bank at Dallas v. McCullough Tool Co., 152 Tex. 471, 259 S. W.2d 724.

This holding makes it unnecessary to pass on the question of whether Home Title Company made the agreement it did and if so whether it was within the Statute of Frauds.

Affirmed.